915 So.2d 841 (2005)
The SHERWIN-WILLIAMS COMPANY
v.
FIRST LOUISIANA CONSTRUCTION, INC., Mark E. McEntyre, Timothy D. Bailey and Janice Johnson Bailey
McConnell Brick & Block Company
v.
Timothy D. Bailey, et al.
No. 2004 CA 0133.
Court of Appeal of Louisiana, First Circuit.
May 6, 2005.
*843 Francis R. White, III, Covington, Counsel for Plaintiff/Appellee The Sherwin-Williams Company.
Eddie J. Lambert, Gonzales, Counsel for Third-Party Plaintiffs/Appellees Timothy and Janice Bailey.
John Hopewell, III, Baton Rouge, Alan J. Robert, Gonzales, Counsel for Third-Party Defendants/Appellants Yvette Bergeron and Commerce Title and Abstract Company.
Before: PARRO, KUHN, and WELCH, JJ.
KUHN, J.
Commerce Title and Abstract Company (Commerce Title) and its employee, attorney Yvette Bergeron, appeal a judgment in favor of Timothy and Janice Bailey, awarding damages on their legal malpractice *844 claim. The Baileys have answered the appeal. The judgment is reverse in part and affirm in part.

FACTUAL AND PROCEDURAL BACKGROUND
In March 2000, Commerce Title was contacted to effectuate the closing of a mortgage and the sale of a lot with a recently-constructed residence. The Baileys, who were purchasing the property, placed down payments totaling approximately $81,000 and borrowed approximately $60,000 through Chateau Mortgage, a mortgage broker that originates loans in the Baton Rouge area. About a week after the March 31, 2000 closing, Janice Bailey learned through a neighbor that the builder who had sold them their property had failed to pay some of the sellers of movables incorporated into their house, and that their property was subject to the lien claims of material men under Louisiana law.[1]
After lien claimants, Sherwin-Williams Company and McConnell Brick & Block Company, respectively filed individual lawsuits to have their liens recognized, the Baileys filed a third-party demand in the subsequently-consolidated lawsuit, levying this legal malpractice claim against Bergeron, the attorney who handled the closing. Commerce Title, Bergeron's employer, was also named as a third-party defendant by the Baileys.
A trial on the merits was held on the third-party legal malpractice claim and the trial court rendered judgment in favor of the Baileys, finding Bergeron had committed legal malpractice. Damages totaling $12,417.75 were awarded against Bergeron and her employer. This appeal by Commerce Title and Bergeron followed. And the Baileys answered the appeal, seeking an increase in the damage award.

LIABILITY FOR LEGAL MALPRACTICE
Commerce Title and Bergeron assert the trial court erred in concluding Bergeron committed legal malpractice.
To establish a prima facie case for legal malpractice, a plaintiff must prove there was an attorney-client relationship, the attorney was guilty of negligence in his handling of the client's case or professional impropriety in his relationship with the client, and the attorney's misconduct caused the client some loss or damage. See Prestage v. Clark, 97-0524, p. 9 (La. App. 1st Cir.12/28/98), 723 So.2d 1086, 1091, writ denied, 99-0234 (La.3/26/99), 739 So.2d 800.
Whether an attorney-client relationship exists turns largely on the client's subjective belief that it does. Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567, 571 (La.1986). It is a question of fact subject to manifest error review. Barre v. St. Martin, 93-973 (La.App. 5th Cir.4/26/94), 636 So.2d 1061, 1063, writ denied, 94-1358 (La.9/23/94), 642 So.2d 1288. The testimonial evidence establishes the Baileys believed Bergeron was their attorney and paid Commerce Title's fees for her services, which provide the requisite support for the trial court's factual conclusion that an attorney-client relationship existed between the Baileys and Bergeron.
A lawyer shall not neglect any legal matter entrusted to her. Rules of Professional Conduct, Rule 1.1; Louisiana State Bar Ass'n v. Causey, 393 So.2d 88, 91 (La.1980); Prestage, 97-0524 at p. 9, 723 So.2d at 1091. Attorneys are obligated to scrutinize any contract which they *845 advise their clients to execute and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it. Ramp v. St. Paul Fire and Marine Ins. Co., 263 La. 774, 269 So.2d 239, 244 (1972). The extent of the attorney's duty to the client may depend in part on the client's particular circumstances and situation. Prestage, 97-0524 at p. 9, 723 So.2d at 1091.
The parties do not dispute the salient facts that occurred at the March 31, 2000 closing. Commerce Title was contacted by Chateau Mortgage via a pre-closing form, which indicated that the loan and sale were to occur no later than March 31, 2000. Present at the closing were the Baileys, Bergeron, Chateau Mortgage representative Wanda Hidalgo, who is Janice Bailey's sister, real estate agent Regina Harp, and Mark McEntire, who was the president of the company that built and sold the house and lot to the Baileys. During the span of 30 to 40 minutes, the Baileys executed a stack of documents, which was between 3/4 and one inch thick. As Bergeron identified each document, the Baileys signed it. The Baileys did not read the contents of the documents they were signing.
At some point, the Baileys were presented with an option to purchase title insurance as owners of the property. This they declined and adjustments were made to the closing documents to delete the premium for owner's title insurance. The Baileys were otherwise required to pay the fees for Bergeron's title exam, Commerce Title's abstract, and the mortgagee's title insurance. The Baileys signed a form acknowledging that they did not want the owner's title insurance. The form specifically explained some of the hazards associated with the accuracy of title exams and indicated that the mortgagee's title insurance policy provided coverage only to the mortgagee. According to Bergeron, if the Baileys had elected to purchase owner's title insurance to cover their risks as owners, the Private Works Act liens would not have automatically fallen within the ambit of the policy's coverage; the Baileys would have had to purchase a separate endorsement.
Appellants suggest that the trial court erred in its conclusion that Bergeron was guilty of negligence in her handling of the Baileys' transaction or of professional impropriety in her relationship with them. Specifically, appellants assert that as an attorney whose services were engaged for the purpose of closing a loan for the purchase of newly-constructed property, Bergeron is not negligent or guilty of professional impropriety for failing to warn the purchasers that closing prior to the expiration of the statutory period for assertions of claims and privileges under the Private Works Act[2] subjects their property to the possibility of liens.
When an attorney's performance falls below the standard of competence and expertise usually exercised by other attorneys in handling such matters, the attorney is liable for any damage to the client caused by his substandard performance. Ault v. Bradley, 564 So.2d 374, 379 (La. *846 App. 1st Cir.), writ denied, 569 So.2d 967 (La.1990).
Bergeron testified that as a matter of practice, unless a purchaser of property closing within the Private Works Act statutory lien period chooses title insurance, she does not advise them of the risks associated with potential claims. She explained that upon opting to purchase the insurance, she advises the purchasers of the various endorsements that are available, one of which covers Private Works Act liens.
At trial, the parties submitted the testimony of five attorneys with experience in closing loans. Of those, Ricky Babin and Stephanie Wahl stated that as a general practice they do not perform closings during the Private Works Act statutory lien period. When Babin deviates from that practice, he contacts the major suppliers to ensure the builder has in fact paid for the movables incorporated into the house. Babin and Wahl explained that each clearly advises the purchasers of new construction who close during the lien period of the risks they are exposed to when ownership transfers prior to the expiration of the time for Private Works Act claimants to assert their claims. Additionally, both attorneys require the purchasers to sign agreements holding the attorney harmless. Larry Buquois's approach when closing during the statutory lien period is to assume the risk of unpaid Private Works Act claimants. Suppliers are contacted and presented with a form to sign stating that they have received payment from the builder. Although he does not expressly advise the purchasers of new construction who close during the statutory lien period of the risks from Private Works Act claimants because he assumes the risk, should any Private Works Act lien claims arise, he believes he is responsible to the purchasers for their losses. John Adams testified that he expressly informs purchasers of newly-constructed property of the statutory lien period and of the possibility of liens arising if they choose to close during that time. Only Robert Adams testified that his standard practice conformed to that undertaken Bergeron, i.e., he advises purchasers of new construction of the risks associated with closing during the Private Works Act statutory lien period solely when they purchase owner's title insurance as he outlines the various endorsements which may also be purchased.
Based on the testimony of closing attorneys in the regional area where Bergeron practices, the trial court correctly determined that the standard of competence and expertise usually exercised by other attorneys in handling closings of newly-constructed property undertaken during the Private Works Act statutory lien period includes a duty to advise the purchasers of the risks inherent in closing at that time.[3] Accordingly, the trial court's conclusion *847 that Bergeron is guilty of negligence in handling the closing is not erroneous.[4]

DAMAGES
Without challenging the merits of the awards for the preparation and the amounts of the two liens recognized and maintained on the Baileys' property as a result of these lawsuits,[5] appellants urge that the losses incurred due to Bergeron's negligence does not include the trial court's awards of $1,000 for mental anguish or $5,000 for attorney's fees. The Baileys answered this appeal, suggesting they are entitled to greater amounts for each of these awards.

Mental Anguish
The record supports an award of $1,000 for the mental anguish the Baileys have suffered. See Henderson v. Domingue, 626 So.2d 555, 559 (La.App. 3d Cir.1993), writ denied, 93-2976 (La.1/28/94), 630 So.2d 799 (noting the general entitlement to mental anguish damages under general tort principles and affirming the trial court's award of $10,000 for mental anguish sustained as a result of legal malpractice).
Mr. and Mrs. Bailey each testified about the disruption to their lives and the stress they have endured as a result of Bergeron's negligence, noting that "it's been hell," since learning that their property was subject to liens. Mrs. Bailey stated that due to the uncertainty over the liens and the potential for loss of their property, they had not even hung curtains in their new home. But the record also establishes that despite several lien claimants having asserted their claims, the Baileys were able to refinance their mortgage. And while they appear to have sustained a loss of income because Mr. Bailey was laid off from his job, this was in no way attributable to Bergeron's negligence. Accordingly, trial court's award of $1,000 for the mental anguish the Baileys endured due to Bergeron's failure to apprise them of the risk of liens inherent in closing a loan and sale of a newly-constructed house during the Private Works Act statutory lien period is not an abuse of discretion.

Attorney's Fees
In support of their entitlement to attorney's fees, the Baileys rely on Ramp, *848 263 La. 774, 269 So.2d 239. It is clear that Ramp (and subsequent cases awarding attorney's fees) hold that the plaintiff may be entitled to attorney's fees associated with the underlying action which the defendant attorney negligently handled but not for attorney's fees associated with prosecuting the malpractice claim. See Henderson, 626 So.2d at 559-60.
Mindful that it is the Baileys' burden to prove every element of their damages, the record shows that the only evidence supporting an award of attorney's fees was the testimony of Mr. Bailey, who stated he had incurred $6,000 in attorney fees as of the date of trial. Specifically, Mr. Bailey was not asked and did not distinguish the fees attributable to the prosecution of the malpractice claim from those associated with the Private Works Act lien claims. Thus, because the Baileys failed to prove their entitlement to attorney's fees, the trial court's award of $5,000 is reversed.

CONCLUSION
Accordingly, that portion of the trial court's judgment awarding attorney's fees of $5,000 is reversed. In all other respects, the judgment is affirmed. Appeal costs are assessed against appellants, Commerce Title and Abstract Company and Yvette Bergeron.
REVERSED IN PART; AFFIRMED IN PART.
PARRO, J., agrees in part and dissents in part and assigns reasons.
WELCH, J., concurs with reasons.
PARRO, J., agreeing in part and dissenting in part.
Although I agree with that portion of the majority opinion which reverses the award of attorney fees, I disagree with the rest of the report, based on my belief that an attorney-client relationship was not shown to have existed between the Baileys and Yvette Bergeron.
There appears to be no statutory law or jurisprudence setting forth the relationship of an attorney, selected by a bank or lending institution, to the parties to a closing for the execution of a mortgage and/or sale of property.[1] The primary duty of such an attorney is to be certain that the legal documents and title examination are sufficient to insure that the bank or lending institution's security interest is superior to other possible claims. Additionally, the closing attorney has an obligation to be sure that all legal documents are prepared and executed properly.
Individual purchasers or mortgagors or sellers are always free to employ their own attorneys to review the legal documents prior to closing or to attend the loan closing with them. The mere fact that the Baileys may have thought that Ms. Bergeron was representing only their interests is insufficient to prove the existence of an attorney-client relationship, especially since there was never even a discussion by *849 the Baileys with Ms. Bergeron about the establishment of such a relationship.
Even though the attorney chosen by the bank or lending institution to provide a title examination and prepare the necessary legal documents may have certain obligations in connection with those responsibilities that inure to the benefit of the other parties to the transaction, such obligations, in my opinion, do not arise as the result of an attorney-client relationship with the purchaser or mortgagor or seller in the absence of legislation to that effect. Accordingly, I respectfully dissent in part.
WELCH, J. Concurring.
While I agree with the conclusion that an attorney-client relationship existed between the Baileys and Bergeron, that conclusion is based on the particular facts and circumstances of this case since the record contains no evidence that there was a clear and express understanding between those parties to the contrary. Absent such circumstances, I agree that a buyer could reasonably expect that the closing attorney, whose fee was paid by the buyer, would provide them with appropriate and correct information and advice. However, I concur separately to distinguish this scenario from a case where there is a clear and express understanding between the closing attorney and the buyer that the attorney is not providing those services and that the buyer is free to obtain additional legal services if desired. Under those circumstances, I do not believe the law would support a finding of an attorney client relationship. Because such evidence was lacking in this case, I concur in the result.
NOTES
[1] See generally the Louisiana Private Works Act, La. R.S. 9:4801-4855.
[2] In particular, on March 31, 2000, La. R.S. 9:4822 of the Private Works Act provided in relevant part:

C. Those persons granted a claim and privilege by R.S. 9:4802 for work arising out of a general contract, notice of which is not filed, and other persons granted a privilege under R.S. 9:4801 or a claim and privilege under R.S. 9:4802 shall file a statement of their respective claims and privileges within sixty days after:
(1) The filing of a notice of termination of the work; or
(2) The substantial completion or abandonment of the work, if a notice of termination is not filed.
[3] Relying on a signed acknowledgement declining owner's title insurance, appellants urge that the Baileys were fully apprised of the risk of loss associated with liens arising under the Private Works Act. The acknowledgement, which refers to liens associated with "improvements," does not specifically state the risk a purchaser of new construction assumes when ownership transfers during the Private Works Act statutory lien period. The Baileys testified that they neither read the entire acknowledgement nor were apprised of its contents by Bergeron, who focused instead on whether they wished to purchase title insurance. While Bergeron testified to the contrary, this is a factual finding the trial court resolved in favor of the Baileys. And because an attorney has a duty to advise his or her clients of the consequences that may arise upon execution of legal instruments, see Ramp, 269 So.2d at 243, appellants' reliance on the written acknowledgement to demonstrate that Bergeron fulfilled her duty to warn the Baileys of the risk inherent in closing during the Private Works Act statutory period is misplaced.
[4] Appellants have not asserted any errors with the trial court's determination holding Commerce Title liable along with its employee, presumably on the basis of vicarious liability. See La. C.C. art. 2320.
[5] Appellants contend that the trial court erred in denying a peremptory exception of res judicata, which seeks to preclude Sherwin-Williams Company's claim (as a seller of movables incorporated into the house) for recognition of its lien on the Baileys' property. The gist of appellants' assertion is that because Sherwin-Williams Company failed to have its lien recognized at the time a default judgment was entered against the builder and former owner, the lien claimant's entitlement to a subsequent judgment recognizing and maintaining that lien on the Baileys' property is precluded by the doctrine of res judicata and, thus, the Baileys are not entitled to damages for the amount of Sherwin-Williams Company's lien. Our review of the record shows that appellants joined the Baileys in raising the res judicata exception at the commencement of trial in an oral motion. But pleadings are required to be in writing under La. C.C.P. art. 852, and oral pleadings are not permitted. See Industrial Sands & Abrasives v. Quebedeaux, 366 So.2d 999, 1000 (La.App. 1st Cir.1978). The record does not contain a written exception raising the objection of res judicata filed by appellants. More importantly, a plea of res judicata cannot be sustained on behalf of appellants because they were not parties to the default judgment between Sherwin-Williams Company and the builder. See La. R.S. 13:4231(3) (permitting a conclusive effect of a valid and final judgment "between the same parties"). Thus, the trial court's denial of a res judicata effect in favor of appellants is not erroneous.
[1] In Gifford v. New England Reinsurance Corp., 488 So.2d 736 (La.App. 2nd Cir.1986), the individual purchasers/mortgagors filed a legal malpractice action against the closing attorney chosen by the bank/mortgagee, believing the attorney represented them and that the title insurance policy they purchased on their new home protected them, when in fact, it protected only the bank. The attorney contended he did not have an attorney-client relationship with them and that his client was the bank. After noting that the existence of an attorney-client relationship between these parties had not been established, the court assumed such a relationship in order to address the prescription issue that was before it on appeal, and found that any such claim the purchasers/mortgagors might have had was prescribed.