BROWN, Chief Judge.
| |This is a legal malpractice action. Plaintiffs question the attorney’s handling of the appeal of their medical malpractice case against Willis Knighton Medical Center. In that medical malpractice case, the trial court granted Willis Knighton’s motion for summary judgment on all claims except plaintiffs’ Lejeune claims. The supreme court in Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), held that Louisiana tort law provided, under certain circumstances, that certain classes of bystanders who witnessed physical injury to another were entitled to recover mental anguish damages. This court reversed the trial court’s denial of Willis Knighton’s motion for summary judgment as to plaintiffs’ Lejeune claims. See Jenkins v. Willis Knighton Medical Center, 43,254 (La.App.2d Cir.06/04/08), 986 So.2d 247. Plaintiffs’ attorney then filed a writ of certiorari with the Louisiana Supreme Court. The supreme court declined to consider the writ application because it was not timely filed. Thus, plaintiffs initiated this malpractice case against the attorney, his law firm and their insurer. Defendants filed a motion for summary judgment, which was granted by the trial court. Plaintiffs appealed. We affirm.

Facts and Procedure

The Underlying Medical Malpractice Action

Rosie Jenkins was admitted to the Willis Knighton emergency room on May 15, 2006. Soon thereafter, she suffered a stroke that rendered her brain-dead. Approximately 20 minutes later, a nurse gave Mrs. Jenkins a blood thinner injection, an inappropriate treatment for a stroke victim. The next day Mrs. Jenkins died when she was removed from life support.
l2Plaintiffs, the surviving husband and daughters of Rosie Jenkins, filed a complaint for wrongful death/survival. A medical review panel found that, although administration of the blood thinner Lovenox was a breach of the applicable standard of care, there was no causal relationship between the blood thinner’s administration and Mrs. Jenkins’ death. Plaintiffs filed their petition in district court. Motions for summary judgment were filed by both plaintiffs and defendant.
At the hearing on the motions for summary judgment, plaintiffs’ trial counsel stated that they were “not claiming that [Rosie Jenkins’] death was caused by the administration of the [blood thinner]” and that a Lejeune claim was “the only cause of action [plaintiffs had] remaining.” The court then granted Willis Knighton’s motion for summary judgment on the wrongful death/survival claim but denied summary judgment on (plaintiffs’) bystander Lejeune claim.
Willis Knighton filed a supervisory writ application with this court, seeking review of the trial court’s denial of its motion for *669 summary judgment as to plaintiffs’ Le-jeune claims. The writ application was granted. Plaintiffs did not seek review of the trial court’s ruling dismissing their other claims. Plaintiffs’ trial attorneys withdrew.
Plaintiffs hired Alex Washington and his firm, Washington and Wells, to represent them; at that time, their Lejeune claim was pending in this court. This court reversed the trial court’s judgment denying Willis Knighton’s motion for summary judgment as to the Lejeune claims and 1 sgranted summary judgment in favor of Willis Knighton on all issues. Specifically, this court stated that:
While there was a breach of the standard of care, i.e., the Lovenox injection, the medical evidence presented by the hospital established that the breach did not cause Mrs. Jenkins’ condition or worsen it. The plaintiffs have put forth no medical evidence to the contrary.... [W]e find that since the [hospital] was not liable as a result of the injection, it did not give rise to Lejeune damages on behalf of Mrs. Jenkins’ husband and daughters.
Jenkins v. Willis Knighton Medical Center, 986 So.2d at 252.

The Present Legal Malpractice Claim

Attorney Washington prepared and filed an application for a writ of certiorari with the Louisiana Supreme Court on plaintiffs’ behalf urging reversal of this court’s ruling “with respect to plaintiffs’ Lejeune claims.” The supreme court declined to consider the writ application because it was one day late.[1] Plaintiffs thereafter instituted the instant legal malpractice action against Washington, his law firm and the firm’s malpractice insurer.
Washington and the other defendants filed a motion for summary judgment asserting that, even had plaintiffs’ writ application been timely filed, they would not have been successful in their remaining claim against Willis Knighton. The trial court granted defendants’ motion for summary judgment and this appeal was taken.

Discussion

To establish a claim for legal malpractice, plaintiffs must prove the existence of an attorney-client relationship; negligent representation by the | ^attorney; and loss caused by that negligence. Costello v. Hardy, 03-1146 (La.01/21/04), 864 So.2d 129; White v. Golden, 43,076 (La. App.2d Cir.04/30/08), 982 So.2d 234; Khan v. Richey, 40,805 (La.App.2d Cir.04/19/06), 927 So.2d 1267, writ denied, 06-1425 (La.11/03/06), 940 So.2d 662; Whittington v. Kelly, 40,386 (La.App.2d Cir.12/14/05), 917 So.2d 688. Absence of proof of one of these elements is fatal to plaintiffs’ claim. Whittington, supra.
In the instant case, plaintiffs established the existence of an attorney-client relationship and negligence by the attorney. An attorney is negligent if he accepts employment and fails to assert timely a viable claim or causes the loss of opportunity to assert a claim for recovery. Jenkins v. St. Paul Fire and Marine Ins. Co., 422 So.2d 1109 (La.1982).
As recently observed by the Louisiana Supreme Court, in MB Industries, LLC v. CNA Ins. Co., 11-0304 (La.10/25/11), 74 So.3d 1173, 1187:
However, it is not enough to simply show (the attorney) acted negligently. MBI must also introduce evidence of causation. Although this Court disavowed the “case within a case” doctrine in Jenkins v. St. Paul Fire & Marine *670 Ins. Co., 422 So.2d 1109, 1110 (La.1982), we reiterated that causation “is an essential element of any tort claim.” At the very least, MBI must establish some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation. Id. It has not done so.
Where a client shows that his lawyer’s professional impropriety has caused him some loss, the attorney then has the burden of overcoming that client’s prima facie case by showing the client could not have succeeded ^notwithstanding the impropriety. Jenkins v. St. Paul Fire and Marine Ins. Co., 422 So.2d at 1110.
At the summary judgment hearing in November 2007 (in the underlying medical malpractice case) plaintiffs’ trial attorneys conceded on the record, months before plaintiffs retained Alex Washington to represent them, that plaintiffs “were not claiming that [Mrs. Jenkins’] death was caused by the administration of the [blood thinner].” Trial counsel further stated that a possible (bystander) Lejeune claim was “the only cause of action [plaintiffs had] remaining.” These statements, as well as the Second Circuit’s June 2008 opinion in Jenkins v. Willis Knighton Medical Center, supra, make clear that the only claims at issue when Alex Washington agreed to represent plaintiffs in March 2008 were plaintiffs’ Lejeune claims.

Lejeune Claims

In Lejeune, 556 So.2d at 566-568, the court recognized the right of action to recover mental distress damages for bystanders who themselves were not physically injured but who witnessed physical injury to another as a result of negligent conduct by the tortfeasor. The Lejeune court applied a duty-risk analysis, observing that the risk of a person suffering mental anguish damages resulting from the negligent injury to a third person may fall within the scope of a defendant’s duty. The Louisiana Legislature essentially codified this decision in Louisiana Civil Code Article 2315.6, which provides:
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or | (¡emotional distress that they suffer as a result of the other person’s injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
[[Image here]]
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant’s position to suffer serious mental anguish or emotional distress from the experience, and the claimant’s mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article. (Emphasis added).
As noted by the Supreme Court in Trahan v. McManus, 97-1224 (La.03/02/99), 728 So.2d 1273, 1279:
The requirements of Article 2315.6, when read together, suggest a need for temporal proximity between the tortious event, the victim’s observable harm, and the plaintiffs mental distress arising from an awareness of the harm caused by the event. The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a trau *671 matic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances.
Regarding plaintiffs’ claims for Lejeune damages, it is undisputed that Willis Knighton had no liability for Rosie Jenkins’ death in the underlying medical malpractice action.
The consensus of the medical evidence was that Mrs. Jenkins was brain dead due to [a stroke] by approximately 5:10 a.m. and that the administration of the Lovenox at 5:29 a.m. did not cause the [stroke] or her ensuing death. Additionally, the Lovenox did not worsen her condition or diminish her chance of survival as her condition was so grave and her prognosis so poor that neither recovery nor even survival was possible ...
We find that since the defendant was not liable as a result of the injection, it did not give rise to Lejeune damages on behalf of Mrs. Jenkins’ husband and daughters.
Jenkins v. Willis Knighton Medical Center, 986 So.2d at 251-252.
|7In the instant case, the event that plaintiffs claim gave rise to their Lejeune damages, the hospital’s administration of blood thinner to Mrs. Jenkins, has been found not to have caused or contributed to Mrs. Jenkins’ death. Because Willis Knighton had no liability for Mrs. Jenkins’ condition, no Lejeune damages arose. See Holland v. Hornyak, 07-894 (La.App. 5th Cir.11/27/07), 971 So.2d 1227, writ denied, 08-0333 (La.04/25/08), 978 So.2d 366.
Furthermore, this injection occurred in the hospital emergency room. It does not satisfy the requirement in C.C. art. 2315.6 of viewing or coming upon the scene of an injury causing event. Plaintiffs were not present but instead were told of the injection at a later time by hospital personnel. See Veroline v. Priority One EMS, 09-1040 (La.10/09/09), 18 So.3d 1273.
Since plaintiffs could not have succeeded on their Lejeune claims, summary judgment on their legal malpractice claim was proper.

Independent Action of the Attorney

There remains plaintiffs’ claim for emotional stress and anguish independent of the loss of the medical malpractice claim. They contend that clients can recover damages against their former attorney for the emotional distress caused to them by his negligence. Plaintiffs assert that when the attorney advised them of his failure, they suffered real and substantial mental anguish at having lost the “opportunity or chance to prevail in their case.” Plaintiffs cite Beis v. Bowers, 94-0178 (La.App. 4th Cir.01/19/95), 649 So.2d 1094, writ denied, 95-0429 (La.03/30/95), 651 So.2d 847, in support.
|8In the instant case, plaintiffs sought specific or economic damages as well as general damages caused by their attorney’s negligence. They have now been denied these economic damages, leaving only their claims for emotional distress. While the outer boundaries of the law are not yet visible in Louisiana when dealing with emotional distress claims in legal malpractice cases, we find that under the circumstances of this case such damages are not warranted.[2]
*672 In order to recover mental distress damages where no physical injury was suffered by the victims, the plaintiffs must show “an especial likelihood of genuine and serious mental distress” resulting from conduct directed at them. Moresi v. State Through Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990); Dumas v. Angus Chemical Co., 31,400 (La.App.2d Cir.01/11/99), 728 So.2d 441, writ denied, 99-0751 (La.04/80/99), 741 So.2d 19.
To assert a cause of action for negligent infliction of emotional distress, there must be proof that the defendant violated a legal duty owed to the plaintiffs, who must also bear the heavy burden of proving outrageous conduct by the defendant. Doe v. Dunn, 39,179 (La.App.2d Cir.12/22/04), 890 So.2d 727; Succession of Harvey v. Dietzen, 97-2815 (La.App. 4th Cir.06/24/98), 716 So.2d 911.
|9In the instant case, Attorney Washington’s negligence in filing plaintiffs’ writ application with the supreme court one day late is not “outrageous” conduct, nor did plaintiffs show that they suffered genuine and serious mental distress caused by defendant’s negligent conduct. As noted by the supreme court in Moresi, supra, limiting the recovery of mental anguish damages in cases in which there is no physical injury, bodily injury or property damage caused by the negligent defendants to those cases in which the victim can show an “especial likelihood of genuine and serious mental distress” resulting from conduct directed at the victim “guarantees that the claim is not spurious.” Moresi, 567 So.2d at 1095. In keeping with this court’s rulings in Whittington v. Kelly, supra, and Jarrell v. Miller, 38,360 (La. App.2d Cir.09/09/04), 882 So.2d 639, writ denied, 04-2488 (La.12/17/04), 888 So.2d 868, we do not find any evidence to support plaintiffs’ claim for mental anguish damages in this case.
In the instant case, Attorney Washington immediately told plaintiffs about his error in filing their writ application with the supreme court; he was honest with his clients about what had occurred. In fact, informing them of his negligence was an ethical and legal obligation. Although unfortunate, the untimely filing was not “outrageous” conduct, nor did plaintiffs show that they suffered genuine and serious mental distress caused by Washington’s neglect. There are no material issues of fact and summary judgment was proper.

110Conclusion

For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs are assessed to plaintiffs-appellants.

. Alex Washington sent it by FedEx rather than U.S. mail, which caused it to lack the necessary postmark which would have detailed its timely mailing.

. There are cases in which the original claim negligently handled by the attorney will not be predicated upon an economic loss, such as cases involving issues of contested child custody or visitation, confinement to a mental hospital, imprisonment, adoption, etc. Not to allow mental anguish damages under these limited circumstances would leave such a *672 client without a remedy and virtually immunize the negligent attorney. This would certainly be contrary to public interest and would not constitute sound public policy. See Jarrell v. Miller, 38,360 (La.App.2d Cir.09/09/04), 882 So.2d 639.