550 So.2d 1273 (1989)
Imelda RICHARDS, et al.
v.
Weldon A. COUSINS, et al.
No. 88-CA-1809.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1989.
Writ Denied December 1, 1989.
*1274 Martin E. Regan, Jr., New Orleans, for appellants.
Charles F. Gay, Jr., Adams & Reese, New Orleans, for appellees.
GARRISON, CIACCIO and WARD, JJ.
CIACCIO, Judge.
Plaintiffs, Imelda Richards and her son, Robert B. Richards, Jr., filed suit against defendants, attorney Weldon Cousins, acting in his capacity as a notary, New England Insurance Company, Cousins' malpractice liability insurer and Susan Richards, Mrs. Richards' daughter, for damages they allegedly sustained as the result of a simulated sale of real property notarized by Mr. Cousins. Plaintiffs appeal the district court's judgment rendered in their favor.[1] We amend the judgment and affirm it as amended.
On November 30, 1978, Weldon Cousins prepared and notarized an act of sale of property which was the home of Mr. and Mrs. Robert B. Richards, Sr., located at 4337 Kennon Street in New Orleans. This act, although appearing to be a cash sale, was in fact, a simulated sale of the house from Mr. and Mrs. Richards to their daughter Susan.
Mr. and Mrs. Richards had decided to put the property in Susan's name because of Mr. Richard's declining physical and mental health. Along with the act of sale, Mr. *1275 Cousins notarized a counter letter executed by Susan, which acknowledged that the property was actually owned by Mr. and Mrs. Richards despite the provisions of the cash sale and that Mr. and Mrs. Richards could demand the transfer of the property back to them from Susan at any time. Mr. Cousins recorded the act of sale with the Registrar of Conveyances but did not record the counter letter.
Mr. Richards, Sr. died in February 1983. Shortly thereafter, Mrs. Richards called Mr. Cousins and requested that he transfer the property back into her name. Mr. Cousins prepared another act of sale and arranged a meeting at his office in May or June 1983 with Mrs. Richards and Susan. At this meeting, Mrs. Richards and her daughter had a confrontation and then left Mr. Cousins' office without signing the act of sale.
Mrs. Richards then contacted another attorney, Mr. Joseph DiRosa, Jr., requesting that he review the proposed sale documents to insure that the reconveyance of the property was properly prepared. Mr. DiRosa contacted Mr. Cousins asking that he send him the documents. On September 16, 1983, Mr. Cousins sent Mr. DiRosa photocopies of the proposed act of sale. On January 18, 1984, Mr. Cousins met with Mr. DiRosa and informed him that he had recently learned from Susan that she had executed two mortgages on the property in excess of $30,000. Susan had executed the first mortgage to Columbia Homestead on July 5, 1983 and the second mortgage on September 30, 1983 in favor of Credithrift of America. Later that day Mr. DiRosa contacted Mrs. Richards and her son and told them of the existing mortgages.
After receiving notice that the mortgages were delinquent, Mrs. Richards made several payments to Credithrift and Columbia Homestead in March, April and June of 1984. Finally, under the threat of foreclosure from both mortgage holders, the property was sold to a third party.
Mrs. Richards and her son filed suit alleging fraud by Susan in mortgaging the property and alleging negligence on the part of Mr. Cousins for failing to record the counter letter and in failing to advise plaintiffs of the ability of Susan to encumber, lease or alienate the property without a recorded counter letter.
Following a trial on the merits, the trial court rendered judgment awarding Robert $4,000 and Mrs. Richards $25,000. The trial judge found Mr. Cousins negligent in failing to advise Mrs. Richards of the possible consequences of a simulated sale to Susan. The trial court also found that, because Mrs. Richards had consulted both Mr. Cousins and Mr. DiRosa to get the house back in her name prior to Susan's placing the mortgages on the property, she could have simply recorded the counter letter and prevented the encumbrances. The trial court then allocated 50% of fault to Mrs. Richards and reduced her award accordingly. The trial judge further concluded there was no basis for awarding plaintiffs any damages for emotional distress and mental anguish.
Plaintiffs first contend on appeal that the trial judge erred in reducing by 50% the damages awarded to Robert Richards due to the comparative negligence of his mother. In their appellate brief, defendants concede that the trial court made no reduction of Robert's award.
The judgment rendered by the trial court reads in part:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Robert Richards and against defendants, Weldon A. Cousins, New England Reinsurance Corporation and Susan Richards in the sum of four thousand dollars ($4,000.00) together with judicial interest from the date of judicial demand until paid and all costs of these proceedings, subject to reduction by fifty percent (50%) for fault attributable to Imelda Richards.
In its reasons for judgment the trial court states:
The facts of the case in evidence established that Mr. Cousins did not tell plaintiff Imelda Richards the possible consequences of placing the property in Susan's *1276 name with only an unrecorded counter letter. His testimony at trial was not conclusive on the point, but his deposition testimony combined with his trial testimony is satisfactory on that issue.
He should have done so. Max Nathan, Jr., an expert in real estate law, was of the opinion that Mr. Cousins had an obligation to inform Imelda Richards of the full impact of an instrument she was about to execute and all consequences and risks involved in the transaction. His failure to do so constituted negligence on his part and he is therefore at fault in the premises.
Ms. Imelda Richards consulted Mr. DiRosa before any encumberances (sic) were placed on the property and also consulted with Mr. Cousins in an attempt to "get her house back" before any encumberances (sic) were placed upon the property. At that time she could have simply recorded the counter letter and prevented any alienation or encumberances (sic) by Susan. She is, therefore, also at fault in the premises.
Fault will be apportioned fifty percent (50%) to plaintiff, Imelda Richards and fifty percent (50%) to defendant Weldon A. Cousins.
* * * * * *
It is apparent from the trial court's reasons for judgment that Mrs. Richards, and not Robert, was found contributorily negligent. Because the sum of the percentages of negligence attributed to Mrs. Richards and Mr. Cousins by the district court is 100%, it is clear that the court did not intend to reduce Robert's award. The aforementioned portion of the judgment, insofar as it reduces Robert's award by the percentage of fault attributed to Mrs. Richards, is not in conformity with the court's findings as set forth in its reasons for judgment. Accordingly, we will amend the judgment by deleting from it the phraseology reducing Robert's award by the fault attributed to his mother.
As their second assignment of error, plaintiffs urge that the trial court's finding that Mrs. Richards was at fault was clearly erroneous. They contend that defendants' failure to specifically plead Mrs. Richards' contributory negligence as an affirmative defense precluded such a finding by the trial court.
When contributory negligence is applicable to a claim for damages the amount of damages shall be reduced in proportion to the percentage of negligence attributable to the person suffering the injury or loss. L.S.A.-C.C. art. 2323.
Contributory negligence is an affirmative defense which must be specifically pleaded. L.S.A.-C.C.P. art. 1005. Nevertheless, pleadings may be enlarged to include an affirmative defense not specifically pleaded where evidence supporting such a defense is introduced without objection. L.S.A.-C. C.P. art. 1154; Sanders v. New Orleans Public Service, Inc., 422 So.2d 232 (La. App. 4th Cir.1982). Plaintiffs' attorney did not object to any evidence of contributory negligence during the trial, and therefore, the pleadings could be enlarged by any such testimony.
Contributory negligence is objectively determined under the reasonable man standard. McInnis v. Fireman's Fund Insurance Co., 322 So.2d 155 (La. 1975). In the instant case, defendants must show by a preponderance of the evidence that Mrs. Richards failed to act as a reasonable and prudent person would have in like circumstances and that such negligence was a contributory cause of the damages. Wilkinson v. Hartford Accident and Indemnity Company, 411 So.2d 22 (La.1982). At trial, Mrs. Richards testified that she, her husband and Susan met with Mr. Cousins in November 1978 in order to have their home transferred into Susan's name for "safekeeping". Mrs. Richards testified that she wanted Mr. Cousins to send her a "letter of intent" regarding true ownership of the property. The letter of intent, according to Mr. Cousins' trial testimony, was a counter letter. Mrs. Richards also testified that she and her husband were rushed to leave the office in November 1978 due to Mr. Richards' ailing condition. She stated they neither read the papers nor asked any questions about the *1277 transactions. Mrs. Richards further testified that she contacted Mr. Cousins shortly after her husband's death and met with him and Susan at his office in May 1983 in order to transfer the property back to her and her son. She stated that at that meeting she and her daughter were at odds and they left Mr. Cousins' office without ever signing the act of sale to retransfer the property. According to her testimony, it was at this meeting that Mrs. Richards sensed that her house was gone. She stated she learned of the mortgages four or five weeks after the May meeting when she began receiving statements from Columbia Homestead and Credithrift. After that, Mrs. Richards said her son called Mr. DiRosa to make an appointment with him. She stated Mr. DiRosa advised them to pay the mortgage companies in order to prevent a foreclosure.
Mr. Cousins testified at trial that he explained to Mr. and Mrs. Richards at their meeting in November 1978 the purpose of the counter letter. He stated he told them that they could demand to have the property put back in their name or record the letter and place a cloud on the title to the property. Mr. Cousins also testified that it was June 15, 1983, not in May 1983 as testified to by Mrs. Richards, that he again met with Mrs. Richards and Susan. He stated that he prepared another act of sale but Mrs. Richards and her daughter had an argument and then left without ever executing the sale.
The record indicates that after the trial on the merits, the trial judge allowed plaintiffs' trial attorney, Mr. DiRosa, to withdraw as counsel of record and to file into evidence a post-trial affidavit setting forth his version of the sequence of events. Mr. DiRosa's affidavit states that Mrs. Richards first contacted him in the late summer of 1983. She requested that he review a proposed act of sale transferring interest in the Kennon Avenue property from Susan Richards to her and her son. Mr. DiRosa states that he received the documents from Mr. Cousins on September 16, 1983, and that to his knowledge, plaintiffs had received no notice or had no knowledge of the two mortgages until January 18, 1984 when he informed them of their existence.
Plaintiffs contend that Mrs. Richards was not contributorily negligent for she could not have recorded the counter letter because it was not in her possession. The evidence in the record reflects that Mr. Cousins had possession of the counter letter prepared in November 1978, but there is nothing in the record which suggests that he wilfully withheld the counter letter from Mrs. Richards. The trial testimony demonstrates that Mrs. Richards was well aware that she and Susan had a grave disagreement regarding the property in May or June 1983. At that time, she could have insisted that Mr. Cousins record the counter letter or could have recorded it herself in order to prevent Susan from encumbering the property. Likewise, when she retained Mr. DiRosa as legal counsel in the summer of 1983, she could have requested that he record the counter letter which would certainly have prevented Susan from executing the second mortgage. In any event, Mrs. Richards failed to record the counter letter or any other document which would have put third parties on notice that the Kennon Avenue property had a cloud on its title.
The allocation of comparative negligence is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Hammer v. Combre, 503 So.2d 624 (La.App. 4th Cir. 1987). A review of the record and the trial court's reasons for judgment demonstrates that the law was properly applied to the facts established at trial and that the trial court's determination was not clearly wrong.
As their last assignment of error, plaintiffs argue the trial judge erred in denying them damages for mental anguish and emotional distress. They contend Mrs. Richards and Robert have endured substantial mental anguish as the result of losing their home and many of their household possessions.
In support of their contention plaintiffs cite the case of Fontenot v. F. Hollier & *1278 Sons, Inc., 478 So.2d 1379 (La.App. 3rd Cir.1985). However, in Hollier and its companion, LaFleur v. F. Hollier & Sons, Inc., 478 So.2d 1390 (La.App. 3rd Cir.1985), the Supreme Court reversed the court of appeal on the issue of damages and denied plaintiffs damages for mental anguish where defendant company sold one of the plaintiffs a defective grain drill which resulted in the loss of plaintiffs' crops. LaFleur v. John Deere Company, 491 So.2d 624 (La.1986). Clearly, that case is no authority for the award of damages for mental anguish in connection with a pecuniary loss.
Plaintiffs' losses were strictly pecuniary. Plaintiffs' actual damages are their respective portions of the amounts deducted from the proceeds of the sale of the house which included $26,498.87, the remaining balance of the mortgages, and $4,981.00, the expenses of the sale, in addition to $713.40 which was the total amount of the payments plaintiffs made on the mortgages prior to the sale of the house. We can find no cases in our jurisprudence, and plaintiffs have cited none in their brief, where damages for mental anguish or emotional distress were awarded when a plaintiff suffered a purely monetary loss. As such, we find no error in the trial court's judgment denying plaintiffs damages for emotional distress.

DECREE
In accordance with the reasons stated herein, the portion of the district court judgment awarding damages to Robert Richards is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Robert Richards and against defendants, Weldon A. Cousins, New England Reinsurance Corporation and Susan Richards in the sum of four thousand dollars ($4,000.00) together with judicial interest from the date of judicial demand until paid and all costs of these proceedings.
In all other respects, the district court judgment is affirmed.
AMENDED and as AMENDED AFFIRMED.
NOTES
[1] Defendants did not appeal or answer plaintiffs' appeal. Accordingly, the issue of the correctness of the judgment holding the notary liable is not before us and we offer no opinion regarding same.