2013 VT 34

## Leland Vincent v. Douglas DeVries

[72 A.3d 886]

No. 12-026

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed May 24, 2013

*Robert F. O'Neill* and *Navah C. Spero* of *Gravel & Shea PC*, Burlington, for Plaintiff-Appellee.

*Thomas F. Heilmann* and *William L. Gagnon* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Defendant-Appellant.

¶ 1. **Robinson, J.** This case involves a jury award of emotional distress and economic damages in a legal malpractice action. Defendant challenges the damages award on the grounds that emotional distress damages are not available in a legal malpractice case and that the award of economic damages equal to the amount plaintiff paid to settle the underlying case was improper because plaintiff failed to establish that the underlying settlement was reasonable. We reverse as to the award of emotional distress damages and affirm as to the economic damages award.

¶ 2. The facts of the underlying case that gave rise to this malpractice action are summarized in our three opinions involving that case. See *Wetherby v. Vincent*, No. 2007-276 (Vt. Mar. 26, 2008) (unpub. mem.); *Wetherby v. Vincent*, No. 2005-417 (Vt. Oct. 3, 2006) (unpub. mem.); *Wetherby v. Vincent*, No. 2004-014 (Vt. Sept. 1, 2004) (unpub. mem.). In May 2003, plaintiff Leland Vincent — then eighty-two — and his older sister signed a contract to sell their home for $52,000 to buyers. Shortly before the scheduled closing, after plaintiff's sister had died, plaintiff

refused to go through with the sale. On July 31, 2003, buyers sued for specific performance on the contract. Defendant, attorney Douglas DeVries, represented plaintiff, the seller, who was the defendant in that suit and is now the plaintiff in this malpractice case against attorney DeVries.[1] Before filing any answer or counterclaim on plaintiff's behalf, defendant DeVries filed a motion for summary judgment for plaintiff, arguing that the contract lacked specific terms and was unsupported by consideration. The day before the scheduled September 10, 2003 hearing on buyers' attachment motion, the parties filed with the court a stipulation stating that the court could resolve the attachment issues as well as the merits on the basis of the parties' summary judgment pleadings. Buyers filed a cross-motion for summary judgment arguing promissory estoppel, and defendant DeVries did not file a further response for plaintiff by the assigned deadline. The court granted summary judgment to buyers on October 3, 2003.

¶ 3. Defendant, on plaintiff's behalf, subsequently filed an answer and a series of pleadings seeking relief from judgment and a denial of buyers' summary judgment motion on the ground that plaintiff and his sister had been induced into signing the contract by buyers' fraud and misrepresentation. In particular, plaintiff testified by affidavit that he was legally blind and that he signed the agreement only after buyers told him it was not an agreement to sell his property. The court ultimately reaffirmed its judgment for buyers on the ground that the parties' stipulation authorizing the court to resolve the merits on the basis of the parties' summary judgment pleadings precluded plaintiff from raising new legal issues at that stage. The court entered a judgment for specific performance for buyers and subsequently denied motions for relief from judgment filed on plaintiff's behalf. This Court twice upheld the trial court's rulings. See *Wetherby v. Vincent*, No. 2007-276 (Vt. Mar. 26, 2008) (unpub. mem.); *Wetherby v. Vincent*, No. 2004-014 (Vt. Sept. 1, 2004) (unpub. mem.).

¶ 4. In June 2008, on the eve of a hearing on buyers' motion for the court to authorize a third party to execute a deed to transfer the property from Vincent to buyers, plaintiff, then represented by new counsel, entered into a settlement agreement with buyers

---

[1] In this opinion, we identify the parties in this case with reference to their status in *this* case rather than in the underlying case: plaintiff Leland Vincent and defendant Douglas DeVries.

that allowed him to keep his home. The agreement, which was contingent on approval by the superior court probate division because plaintiff was subject to a guardianship, required plaintiff to pay buyers $68,000 plus $35,000 "to reimburse [buyers] for [their] attorney's fees and costs." In exchange for these payments, the settlement provided that the superior court's order requiring specific performance would be null and void.

¶ 5. Meanwhile, in May 2008, plaintiff brought this legal malpractice action against defendant, pointing to defendant's failure to timely file an answer, affirmative defenses, or a counterclaim in the suit; defendant's recommendation that plaintiff sign a stipulation that prevented plaintiff from raising defenses to buyers' suit without informing him of the consequences; defendant's failure to present appropriate defenses to the summary judgment motion; and defendant's failure to inform plaintiff of filings and dispositive orders in the course of the litigation. The essence of plaintiff's complaint is that defendant had notice of plaintiff's limitations but failed to recognize and timely plead meritorious defenses to buyers' specific performance action. Plaintiff also alleges that defendant committed malpractice in advising him not to accept a pre-suit settlement offer by the buyers that would have allowed him to rescind the contract to sell his house in exchange for $15,000 — considerably less than buyers ultimately required to allow plaintiff to keep his home. In his complaint against defendant, plaintiff sought "damages in an amount to be determined by the trier of fact together with costs and such other and further relief as the Court may deem fitting and proper."

¶ 6. Defendant admitted to the facts underlying plaintiff's claim that defendant breached a duty to plaintiff, and put to the jury the issues of causation and damages. That required plaintiff to conduct essentially a trial-within-a-trial to prove that if defendant had not represented plaintiff negligently in the litigation with the buyers, plaintiff would not have been ordered to convey his home to buyers in exchange for $52,000. If plaintiff won on that issue, he could then prove the damages he suffered as a result of the breach.

¶ 7. In repeated motions before, during, and after trial, defendant strenuously argued that, as a matter of law, emotional distress damages are not available in a legal malpractice case such as this. Defendant also argued that because specific performance was the only remedy available under the contract plaintiff signed to sell

his property to buyers, plaintiff was not at risk of a judgment for damages to buyers. Nor was plaintiff subject to any potential attorney's fee award in connection with the judgment for specific performance that the court awarded to buyers. Given these facts, defendant argued, there was no evidence that it was reasonable for plaintiff to agree to a settlement requiring him to pay $103,000 above and beyond the $52,000 purchase price for the house that he forfeited by keeping the house. The settlement agreement was thus an improper basis for gauging plaintiff's economic damages. Defendant filed motions for judgment as a matter of law on both of these issues, which the court denied.

¶ 8. The jury returned a verdict for plaintiff, awarding a total of $183,000 in damages comprising $103,000 in economic damages — representing what plaintiff paid to settle the underlying case and retain his home — and $80,000 in emotional distress damages.

¶ 9. Defendant appeals, challenging the trial court's denial of his motions for judgment as a matter of law on the issues of emotional distress and economic damages. We review a denial of a motion for judgment as a matter of law de novo, considering the evidence "in the light most favorable to the nonmoving party, excluding the effect of modifying evidence." *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶ 8, 188 Vt. 245, 6 A.3d 701. "Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party on that issue. Thus, we will reverse the trial court's denial of a motion for judgment as a matter of law only where no evidence exists that fairly and reasonably supports the jury's verdict." *Id.* (quotations and citations omitted).

## I. Emotional Distress Damages

¶ 10. On appeal, defendant reiterates his argument that, as a matter of law, emotional distress damages are not available in this legal malpractice case. We have never decided the question; the closest we have come was a case relied upon by plaintiff in which we suggested that under certain exceptional circumstances, emotional distress damages might be available for legal malpractice. *Fitzgerald v. Congleton*, 155 Vt. 283, 292 n.7, 583 A.2d 595, 600 n.7 (1990). In *Fitzgerald*, we considered a legal malpractice claim against a lawyer who represented a mother in a case in which the State had alleged that her child was in need of supervision. As a result of the defendant lawyer's negligent

representation, the mother alleged, she lost custody of her child for a period of time. The mother filed her claim more than three years after discharging the lawyer, and the issue on appeal was whether the trial court erred by applying the three-year rather than the six-year statute of limitations and dismissing her legal malpractice claim. We concluded that to the extent that the mother sought damages for economic losses, her claim was governed by the six-year statute of limitations, but that her claim for damages for the emotional distress suffered as a result of defendant's negligent representation was barred by the three-year statute of limitations. *Id.* at 293, 583 A.2d at 601. In arriving at the conclusion that emotional distress damages were injuries to the person subject to the three-year statute of limitations, we assumed without deciding that these damages were actually available in attorney malpractice, and we noted, "Absent physical contact, one may recover for negligently caused emotional distress only when the distress is accompanied by substantial bodily injury or sickness. Accordingly, one must show some physical effect of any claimed emotional injury — some bodily hurt — in order to prevail." *Id.* at 292, 583 A.2d at 600 (quotation omitted).

¶ 11. Our discussion in *Fitzgerald* reflected an assumption, at least for the purposes of our statute-of-limitations analysis, that the plaintiff could make a claim for emotional distress in connection with a malpractice action against her lawyer; but we did not expressly so hold, and did not define the contours or limitations of a claim for emotional distress damages in a legal malpractice case other than to state that notwithstanding the requirement of bodily hurt as a predicate to emotional distress damages, "we do not necessarily foreclose the possibility of allowing for emotional-distress damages absent physical manifestations under special circumstances where the nature of the tortious act guarantees the genuineness of the claim." *Id.* at 292 n.7, 583 A.2d at 600 n.7.

¶ 12. In the limited number of cases before this Court regarding the availability of emotional distress damages for negligence in the absence of physical injury, we have reaffirmed this general rule. See *Goodby v. Vetpharm, Inc.*, 2009 VT 52, ¶ 11, 186 Vt. 63, 974 A.2d 1269 ("We are not persuaded that a special exception to recover noneconomic damages for the loss of companion animals occasioned by negligence, damages not entirely distinct from human grief and anguish attending the negligent destruction of other personally important property, both sentient and nonsentient,

should be undertaken outside of the legislative arena."); *Pearson v. Simmonds Precision Prods., Inc.*, 160 Vt. 168, 173-74, 624 A.2d 1134, 1137 (1993) (denying plaintiff recovery for emotional distress damages for employer's negligent misrepresentation and negligent failure to disclose because only damages for pecuniary injuries are available for those torts); cf. *Cooper v. Cooper*, 173 Vt. 1, 14, 783 A.2d 430, 441 (2001) (allowing damages for emotional distress where acts supporting breach of fiduciary duty by cotenant were intentional).[2]

¶ 13. Although in *Fitzgerald* we recited the general rule that absent physical impact emotional distress damages are only recoverable in cases of ordinary negligence when the distress is accompanied by substantial bodily injury or sickness, we then said in a footnote:

> By this statement, we do not necessarily foreclose the possibility of allowing for emotional-distress damages absent physical manifestations under special circumstances where the nature of the tortious act guarantees the genuineness of the claim. See W. Keeton, Prosser and Keeton on Torts § 54, at 362 (5th ed. 1984) (discusses actions for negligent transmission of a message, especially one announcing death, and negligent mishandling of corpses).

155 Vt. at 292 n.7, 583 A.2d at 600 n.7.

¶ 14. The two types of special circumstances identified in the footnote as exceptions to the general rule — mishandling of bodily remains and negligent transmission of a message announcing death — are long established. See, e.g., *Christensen v. Superior Court*, 820 P.2d 181, 204 (Cal. 1991) (funeral home owed duty to

---

[2] One recognized exception to the general rule disallowing damages for emotional injury resulting from ordinary negligence involves the tort of negligent infliction of emotional distress (NIED). In order to recover for NIED, a plaintiff who has not suffered a physical impact must show that the plaintiff "(1) . . . was within the 'zone of danger' of an act negligently directed at [plaintiff] by defendant, (2) . . . was subjected to a reasonable fear of immediate personal injury, and (3) . . . in fact suffered substantial bodily injury or illness as a result." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 125, 730 A.2d 1086, 1092 (1999). Plaintiff in this case does not purport to rely on a claim of NIED but, rather, seeks damages for emotional distress resulting from defendant's legal malpractice and the court's order requiring him to convey his home on the basis of a distinct legal theory, as set forth below. Our analysis does not turn on the above factors.

close family members of decedents whose remains were mishandled and could be liable for damages associated with mental anguish of those families); *Blackwell v. Dykes Funeral Homes, Inc.*, 771 N.E.2d 692, 697 (Ind. Ct. App. 2002) (family members could sue for emotional distress damages where funeral home lost cremated remains of child); *Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282, 1283 (Me. 1987) (son could sue for negligent infliction of emotional distress where defendant sent him bag that was supposed to contain his father's personal effects but which in fact included "bloodied leg, severed below the knee and bluish in color"); *Johnson v. State*, 334 N.E.2d 590, 591 (N.Y. 1975) (state hospital breached duty when it incorrectly notified daughter that her mother had died and sent bodily remains of another person to her, and daughter could recover for emotional distress from breach); *Carney v. Knollwood Cemetery Ass'n*, 514 N.E.2d 430, 435-36 (Ohio Ct. App. 1986) (decedent's sister and grandchildren had standing to pursue claim against cemetery for dumping decedent's remains behind cemetery). But see *Jobin v. McQuillen*, 158 Vt. 322, 328-29, 609 A.2d 990, 993-94 (1992) (citing case law "involving the negligent mishandling of family members' corpses," but rejecting view that ordinary negligence in handling of decedent's body can support claim for emotional damages).

¶ 15. Although the general rule precluding emotional distress damages in ordinary negligence claims without physical impact is longstanding, well-established, and almost universally embraced, the rationales underlying the rule are less clear and, arguably, not entirely compelling. Some courts have explained that "the law looks with disfavor upon [emotional distress] damages because the proof of their existence often lies wholly within the one who claims to have suffered, and their allowance would open the door to fraud." *Bowman v. Doherty*, 686 P.2d 112, 118 (Kan. 1984). But these courts do not explain why a claim of emotional distress by one who has experienced a physical impact of some sort is significantly more reliable, and they fail to deal squarely with the myriad cases in which common sense and compelling evidence confirm the likely validity of a claim of emotional distress in response to a particular act of negligence — as in the mishandled-bodily-remains cases noted above.

¶ 16. Some courts also point to the lack of foreseeability of emotional injury as a result of negligence unaccompanied by physical harm as a basis for excluding damages for such injury.

See *id.*; see also *Douglas v. Delp*, 987 S.W.2d 879, 885 (Tex. 1999) ("The foreseeable result of an attorney's negligence, [in contrast to that of a physician's negligence], typically extends only to economic loss."). But it is not hard to think of a host of situations in which the likelihood that a person's negligence will lead to substantial emotional distress is high. See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 47 cmts. b, i (2012) ("[F]oreseeability cannot appropriately be employed as the standard to limit liability for emotional harm.").

¶ 17. Perhaps because a flat-out, no-emotional-distress-damages rule in cases not involving physical impact is broader than its rationales would support, courts have carved out or expanded the exceptions to the general rule — such as the exception for mishandling bodily remains described above. Acknowledging the "extensive criticism aimed at the artificial devices used by courts to protect against fraudulent claims and against undue burden on the conduct of defendants," the Maine Supreme Court recognized that "[t]he analyses of commentators and the developing trend in case law encourage us to abandon these artificial devices in this and future tort actions and to rely upon the trial process for protection against fraudulent claims." *Gammon*, 534 A.2d at 1285; see Restatement (Third) of Torts: Physical & Emotional Harm ch. 8, scope note ("[C]ourts have become more comfortable permitting recovery for negligently inflicted emotional harm. . . . Some courts have expanded recovery for negligently inflicted emotional harm when the reasons given . . . for restricting it do not apply. Thus, courts have been more sympathetic to liability when the circumstances are such that any reasonable person would suffer serious emotional harm, when the severity of the harm or the effect of the harm limits the victim's activities of daily life, and when the scope of liability is sufficiently limited.").

¶ 18. The D.C. Court of Appeals recognized this evolution in the law in a thoughtful and thorough survey of the law concerning emotional distress damages:

> [A] number of courts around the country have held that a defendant has a duty to avoid causing emotional distress to a plaintiff if the defendant has undertaken an obligation to benefit the plaintiff *and* if that undertaking, by its nature, creates not only a foreseeable, but an especially likely, risk that the defendant's negligent per-

formance of the obligation will cause serious emotional distress.

*Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 802 (D.C. App. 2011). That court endorsed claims for serious emotional distress damages in the absence of physical impact under limited circumstances:

> We hold that a plaintiff may recover for negligent infliction of emotional distress if the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

*Id.* at 810-11.

¶ 19. On this basis, modern courts have expanded the "mishandling bodily remains" line of cases to include a host of other types of special relationships or undertakings that are "fraught with the risk of emotional harm." Restatement (Third) of Torts: Physical & Emotional Harm § 47 cmt. b.; see, e.g., *Hedgepath,* 22 A.3d 789 (damages for emotional distress available where doctor negligently informed patient that he was HIV positive when he was not); *Nome Commercial Co. v. Nat'l Bank of Alaska,* 948 P.2d 443, 453 (Alaska 1997) (contractual relationship can be basis for emotional damages where contracts are "highly personal and laden with emotion such as contracts to marry, to conduct a funeral, to sell a sealed casket, to conduct a cesarean birth, [or] to surgically rebuild a nose" (quotation omitted)); *Larsen v. Banner Health Sys.,* 81 P.3d 196, 202-06 (Wyo. 2003) (mother could recover for emotional harm resulting from hospital switching babies, which went undiscovered for forty-three years). "These relationships frequently involve an abuse of power or a position of actual or apparent authority." Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 47 Reporter's Notes, cmt. d (Tentative Draft No. 5, 2007).

¶ 20. How do these considerations play out in the context of claims for emotional distress damages in legal malpractice actions?

The vast majority of jurisdictions do not allow recovery of emotional distress damages in legal malpractice cases where the claim of malpractice is not premised on intentional acts, physical injury, or particularly egregious conduct. See, e.g., *Boros v. Baxley*, 621 So. 2d 240, 244 (Ala. 1993) ("There can be no recovery for emotional distress, where [the legal malpractice] does not involve any affirmative wrongdoing but merely neglect of duty, and the client may not recover for mental anguish where the contract which was breached, was not predominately personal in nature." (quotations omitted)); *Reed v. Mitchell & Timbanard, P.C.*, 903 P.2d 621, 626 (Ariz. Ct. App. 1995) ("We hold that simple legal malpractice resulting in pecuniary loss which in turn causes emotional upset, even with physical symptoms, will not support a claim for damages for emotional distress."); *Aller v. Law Office of Carole C. Schriefer, P.C.*, 140 P.3d 23, 26-27 (Colo. App. 2005) ("emotional distress or other non-economic damages resulting solely from pecuniary loss are not recoverable in a legal malpractice action based on negligence" (quotations omitted)); *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561-62 (Minn. 1996) (emotional distress damage award improper where lawyer's conduct was merely negligent and not willful, wanton or malicious); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980) (damages for emotional distress not available in legal malpractice suit premised upon ordinary negligence, with no allegation of extreme and outrageous conduct); *Akutagawa v. Laflin, Pick & Heer, P.A.*, 2005-NMCA-132, ¶ 25, 126 P.3d 1138 ("[E]motional distress damages alone are not compensable in a legal malpractice case where, as here, there are no allegations of intentional infliction of emotional distress or some heightened level of culpability resulting in severe distress such that no reasonable person could be expected to endure."); *Gautam v. De Luca*, 521 A.2d 1343, 1348 (N.J. Super. Ct. App. Div. 1987) ("[E]motional distress damages should not be awarded in legal malpractice cases at least in the absence of egregious or extraordinary circumstances."); *Dombrowski v. Bulson*, 971 N.E.2d 338, 340, 340-41 (N.Y. 2012) (finding "no compelling reason to depart from the established rule limiting recovery in legal malpractice actions to pecuniary damages" even where client alleged wrongful loss of liberty as result of criminal defense lawyer's negligence); *Hilt v. Bernstein*, 707 P.2d 88, 94-96 (Or. Ct. App. 1985) (plaintiff not entitled to emotional distress damages in legal malpractice claim

where she was not alleging intentional or reckless conduct, and where legal interest that was compromised — financial loss — did not rise to level of claims such as unlawful disinterment of remains or infringement of custody of child, for which emotional distress damages are allowed even without physical injury); *Douglas*, 987 S.W.2d at 885 ("[W]hen a plaintiff's mental anguish is a consequence of economic losses caused by an attorney's negligence, the plaintiff may not recover damages for that mental anguish."); see also 3 R. Mallen & J. Smith, Legal Malpractice § 21:11 (2013 ed.) ("With some jurisdictional exceptions, the rule is that damages for emotional injuries are not recoverable if they are a *consequence* of other damages caused by the attorney's negligence or a fiduciary breach that was not an intentional tort.").

¶ 21. However, following the general trend of narrowing the bar against damages for emotional injury in the absence of physical impact, some courts have concluded that emotional distress damages are recoverable "if the lawyer is contracted to perform services involving deeply emotional responses in the event of a breach." *Miranda v. Said*, No. 11-0552, 2012 WL 2410945, at *4 (Iowa Ct. App. June 27, 2012). Courts have applied this exception in cases in which the legal malpractice leads to a loss of liberty or of one's child, as contrasted with purely pecuniary loss. See, e.g., *Lawson v. Nugent*, 702 F. Supp. 91, 95 (D.N.J. 1988) (holding that where plaintiff's relationship with attorney was predicated upon liberty interest, rather than purely economic interest, plaintiff was entitled to seek damages for emotional distress resulting from twenty extra months of confinement in maximum security penitentiary); *Miranda*, 2012 WL 2410945, at *6-7 (allowing claim for emotional distress damages where defendant immigration lawyer's negligence caused plaintiffs to leave country without right of reentry, forcing separation from their children for at least ten years); *Person v. Behnke*, 611 N.E.2d 1350, 1353-54 (Ill. App. Ct. 1993) (allowing claim for noneconomic damages resulting from plaintiff's loss of contact with children for over five years); *Miranda*, 2012 WL 2410945, at *4; *McEvoy v. Helikson*, 562 P.2d 540, 544 (Or. 1977) (plaintiff could be entitled to damages for "anguish and mental (suffering) due to the loss of his minor child" (quotation omitted)), *superseded by rule on other grounds as recognized in Moore v. Willis*, 767 P.2d 62 (Or. 1988)); see also Restatement (Third) of the Law Governing Lawyers § 53 cmt. g (2000) ("[E]motional-distress damages are ordinarily not recover-

able when a lawyer's misconduct causes the client to lose profits from a commercial transaction, but are ordinarily recoverable when misconduct causes a client's imprisonment. The law in some jurisdictions permits recovery for emotional-distress damages only when the defendant lawyer's conduct was clearly culpable.").[3]

¶ 22. If, in fact, emotional distress damages are available in legal malpractice claims, the question remains whether the threatened loss of one's home is the kind of deeply personal injury — like a loss of liberty or separation from one's child — that can support a claim for emotional distress damages in a legal malpractice case. Other courts that have considered the question have generally concluded that it cannot. The Maine Supreme Court considered the question in a case factually similar to this one. See *Garland*, 2009 ME 86, ¶¶ 24-27. In *Garland*, the plaintiffs alleged that their attorney negligently failed to present evidence that would have defeated their neighbors' adverse possession claim. Without their input or approval, the attorney also allowed the court to consider the case on remand from an appeal without a

---

[3] Most of the cases relied upon by plaintiff clearly fall within the above exceptions to the general rule that damages are not recoverable for emotional injury from legal malpractice. Several do not. In a California case relied upon by plaintiff, the court affirmed an award of emotional distress damages against insurance defense counsel who breached their duty to insured client in order to protect the interests of the insurance carrier. *Betts v. Allstate Ins. Co.*, 201 Cal. Rptr. 528, 546 (Ct. App. 1984). In so doing, the court followed the general law in California which, in contrast to the majority rule, allows emotional distress damages for serious emotional injury in the absence of physical impact with no further showing. See *Molien v. Kaiser Foundation Hosps.*, 616 P.2d 813, 817-21 (Cal. 1980). Likewise, a Louisiana court relied on "general tort principles" in allowing emotional distress recovery for a plaintiff's humiliation and embarrassment resulting from an IRS lien on the plaintiff's property. *Henderson v. Domingue*, 626 So. 2d 555, 559 (La. Ct. App. 1993). The *Henderson* court apparently distinguished a prior opinion holding that emotional distress damages are not available in a legal malpractice claim when the plaintiff's losses are strictly pecuniary on the basis of the gravity of the plaintiff's emotional distress. *Id.* at 559. Finally, the Maine Supreme Court did conclude that a plaintiff who had temporarily lost his license to train horses as a result of defendant lawyer's malpractice could recover emotional distress damages, *Salley v. Childs*, 541 A.2d 1297, 1300 (Me. 1988), but later limited the scope of that decision by tying its holding to the reputational harm the plaintiff in *Salley* had suffered. *Garland v. Roy*, 2009 ME 86, ¶¶ 24-27, 976 A.2d 940. See also *dePape v. Trinity Health Sys., Inc.*, 242 F. Supp. 2d 585, 615-16 (N.D. Iowa 2003) (recognizing general rule that emotional distress damages are not recoverable in legal malpractice claims, but concluding that case was exceptional because of particular foreseeability of harm to plaintiff as result of attorney's conduct).

new hearing, on the basis of the prior record which was inadequate to defeat the adverse possession claim. As a result of losing the property, one plaintiff was "devastated," describing the situation as "one of the greatest losses" he had ever experienced. *Id.* ¶ 10. The Maine Supreme Court reversed the trial court's award of emotional distress damages to the devastated plaintiff. The court acknowledged that it had previously allowed recovery of damages for severe emotional distress, but noted that all the prior cases involved, in addition to economic loss, "egregious actions on the part of the defendant attorney, harm to the plaintiff's reputation, or other personal losses, such as the deterioration of the plaintiff's marriage." *Id.* ¶ 24 (citations omitted). The court continued, "We have never allowed the recovery of emotional distress damages in legal malpractice actions that involve only an economic loss and no egregious conduct by the attorney." *Id.* Considering whether the loss of their beloved property was merely "economic," the court wrote:

> The Garlands contend that the loss of the land was more than just an economic loss to them, but their loss in this case is not analogous to the personal losses for which plaintiffs have previously recovered. Although land is unique for many purposes, an ownership interest in land is economic, not personal.

*Id.* ¶ 25 (citations omitted).

¶ 23. Similarly, in *Crone v. Nestor*, an Iowa appellate court held that an attorney's representation of a plaintiff in a divorce proceeding "was not the sort of contractual relationship that carried with it a deeply emotional response in the event of a breach" that would permit plaintiff to support a claim for emotional distress damages without a showing of physical manifestations. No. 09-0231, 2010 WL 3324923, at *5 (Iowa Ct. App. Aug. 25, 2010). In *Crone*, the plaintiff alleged that her divorce attorney committed legal malpractice by failing to ensure that her ex-husband followed through on his obligations to establish a trust to pay off the mortgage on the house she was awarded in the event of the ex-husband's death. *Id.* at *1. The ex-husband did not set up the trust and died before the mortgage was paid in full, as a result of which the plaintiff lost the house in a foreclosure. *Id.* The plaintiff claimed emotional distress damages. *Id.* The court noted what it labeled the majority view that "emotional distress is

not a reasonably foreseeable consequence of and does not naturally ensue from an act of legal malpractice," and observed that the nature of the representation was not of the sort that triggered an exception for peculiarly personal subject matters and denied such damages. *Id.* at *4 (quotation omitted).

¶ 24. Likewise, a Louisiana appeals court considered a case in which an attorney's negligence in failing to advise the client of the consequences of a "simulated sale" ultimately led to the client's losing the property in foreclosure. *Richards v. Cousins*, 550 So. 2d 1273, 1274 (La. Ct. App. 1989). The court affirmed the trial court's denial of damages for mental anguish and emotional distress resulting from the plaintiffs' loss of their home and many household possessions on the ground that those losses were "strictly pecuniary." *Id.* at 1278. See also *McClain v. Faraone*, 369 A.2d 1090, 1094-95 (Del. Super. Ct. 1977) (denying claim for emotional distress damages where attorney's negligent failure to properly search title led to foreclosure and loss of client's home); *Perkio v. Prunier*, 436 A.2d 72, 74 (N.H. 1981) (citing case holding that damages for mental distress are not generally available in contract action to affirm trial court's exclusion of emotional distress damages in malpractice case against lawyer who negligently represented that property was free of encumbrances).

¶ 25. In light of the above considerations, we conclude that the trial court erred in awarding damages for plaintiff's emotional distress in this case. Assuming without deciding that Vermont law follows the modern trend of allowing damages under certain circumstances for serious emotional distress in legal malpractice claims and that the evidence in this case could support a finding of sufficiently serious emotional anguish to support such a claim,[4] we conclude that the subject of defendant's representation of plaintiff was not of such a personal and emotional nature that it would support an exception to the general rule disallowing recov-

---

[4] Most cases allowing damages for emotional injury in the absence of physical impact require that the emotional injury be serious. See Restatement (Third) of Torts § 47 cmt. *l* ("The rule [allowing emotional distress damages arising from specified special relationships] applies only when the person seeking recovery has suffered serious emotional harm. In addition, the actor's conduct must be such that would cause a reasonable person to suffer serious emotional harm."). Wholly apart from our conclusion that the nature of plaintiff's loss in this case is pecuniary, we have serious doubts about whether the evidence in this case supports a finding of sufficiently serious emotional injury to warrant emotional distress damages.

ery of emotional distress damages in the absence of either physical impact or substantial bodily injury or sickness. In many ways, this case is less compelling than the loss-of-home cases cited above; plaintiff here did not lose his home but, rather, faced a threatened loss of his home which he ultimately avoided by settling the case. We do not mean to suggest that the anxiety associated with the threatened loss of one's home cannot be profound. But in contrast to the loss of liberty or one's child — very significant losses for which there may be no adequate measure of pecuniary damages, and in connection with which serious emotional distress can be readily expected — what plaintiff ultimately lost in this case was money. We consider plaintiff's losses in this case to be economic, and reverse the trial court's award of emotional distress damages to plaintiff.[5]

## II. Economic Damages

■ ¶ 26. "The measure of damages for malpractice is 'all damages proximately caused by the wrongful act or omission.'" *Bloomer v. Gibson*, 2006 VT 104, ¶ 27, 180 Vt. 397, 912 A.2d 424 (quoting 3 R. Mallen & J. Smith, Legal Malpractice § 20.4, at 13 (2006 ed.)). "Such damage may include, for example, the expense of rectifying the malpractice, even when that rectification is ultimately achieved through a settlement." *Motz v. Jackson*, No. C-990644, 2001 WL 725683, at *4 (Ohio Ct. App. June 29, 2001) (evaluating evidence of additional attorneys' fees incurred as result of malpractice and of change in value of case as result of attorneys' malpractice — settlement client actually reached as compared to settlement client would have reached in absence of malpractice); see 4 R. Mallen & J. Smith, Legal Malpractice § 33:33 (2013 ed.) (when lawyer's negligence forces client into disadvantageous settlement, "damages are calculated based on the difference between the actual settlement amount and the proper settlement amount, or what the result should have been through

---

[5] Plaintiff argues that this case falls under a separate exception — recognized by some courts — that allows the award of emotional distress damages when an attorney's errant conduct is egregious. Here, the court never instructed the jury that it needed to find that defendant's conduct was egregious; plaintiff neither requested that it do so nor objected to its instruction. Plaintiff cannot now rest his legal argument on a factual predicate — egregiousness — that is not supported by the jury's verdict. Moreover, we conclude that the evidence in this case would be legally insufficient to support a finding of egregiousness.

judicial resolution, absent malpractice"); Restatement (Third) of the Law Governing Lawyers § 53 cmt. b ("In a lawyer-negligence or fiduciary-breach action brought by one who was the plaintiff in a former and unsuccessful civil action, the plaintiff usually seeks to recover as damages the damages that would have been recovered in the previous action or the additional amount that would have been recovered but for the defendant's misconduct."); *Bloomer*, 2006 VT 104, ¶ 27 ("If plaintiff had incurred legal fees to correct the adverse consequences of defendant's malpractice, those fees might be recoverable because they were 'caused by the wrongful act or omission.' ").

¶ 27. We agree with defendant and the trial court that when a claim for malpractice damages is predicated on the difference between the settlement actually reached and the resolution that would have been reached in the absence of the malpractice, the settlement must be reasonable. Cf. *Digregorio v. Champlain Valley Fruit Co.*, 127 Vt. 562, 566, 255 A.2d 183, 186 (1969) (adopting "reasonable settlement" requirement in context of indemnity claim by retailer against wholesaler for damages to consumer injured by banana with thermometer in it).

¶ 28. The plaintiff has the burden of showing all elements of a legal malpractice case, including damages. See *Clayton v. Unsworth*, 2010 VT 84, ¶ 17, 188 Vt. 432, 8 A.3d 1066 (identifying elements of legal malpractice claim to be proven by plaintiff); see also *Bourne v. Lajoie*, 149 Vt. 45, 53, 540 A.2d 359, 364 (1987) (rejecting plaintiff's claim that defendant attorney's negligent drafting of deed caused her damages by preventing her from selling affected parcels in absence of affirmative evidence of actual offer from prospective purchaser that she was unable to pursue). Accordingly, plaintiff must present prima facie evidence of the reasonableness of the agreement. See *Associated Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 69 (Ky. 2010) ("[T]he best approach is to allow the prejudgment settlement [between the injured party and the insured that assigned its rights against the insurer to the injured party], but to require some assessment of the reasonableness of the award. The plaintiff has the burden of presenting prima facie evidence of the settlement's reasonableness insofar as it purports to establish liability. The defendant retains a full[] panoply of defenses with which to rebut this presumption: fraud, collusion, unreasonableness, etc.").

¶ 29. Ultimately, the question of whether a settlement is reasonable is for the jury. *Boston & Me. R.R. v. Howard Hardware Co.*, 123 Vt. 203, 210, 186 A.2d 184, 190 (1962) ("It was for the jury to determine whether the settlement was reasonable, prudent and reached in good faith. In deciding this issue the jury should have considered the likelihood of recovery . . . and the reasonableness of the amount paid to compromise the claim.").

¶ 30. At the trial below, plaintiff's economic damage claim was predicated solely on the $103,000 settlement plaintiff entered into to void the court order requiring him to transfer his property to buyers for $52,000. Accordingly, the court instructed the jury on economic damages as follows:

> You must award [plaintiff] an amount of money that you believe will put him as nearly as possible in the position he would have occupied if the legal malpractice had not happened. Because [plaintiff] settled his case with the [buyers], you must find that the settlement with the [buyers] was a reasonable settlement before you can award any damages against [defendant] on account of that settlement. In making this determination, you should consider whether a reasonable person in similar circumstances would have agreed to the settlement.

Defendant did not object to this charge.[6]

¶ 31. On appeal, defendant argues that, as a matter of law, plaintiff failed to produce any evidence to support the objective reasonableness of the settlement. In particular, defendant argues that plaintiff faced no exposure for attorney's fees under the purchase and sale agreement and therefore the $35,000 of the settlement that was allocated to the Wetherbys' attorney's fees was strictly voluntary and not a reasonable compromise of a disputed claim; that plaintiff effectively paid $155,000 to remain in the house — the $52,000 purchase price that he forewent plus the $103,000 that he paid out of pocket — when there was no evidence that the property was worth anything near that amount and the 2003 town tax assessment was $52,900; and that plaintiff offered no rationale for the amount of the settlement but instead

---

[6] Plaintiff did object and argues against the requirement that the settlement be reasonable. We agree with the trial court that plaintiff would not be entitled to recover damages from defendant for sums unreasonably paid to avoid transferring his home.

relied entirely on buyer's objected-to testimony on cross-examination — after plaintiff had rested his case — regarding buyers' settlement demands.

¶ 32. Plaintiff points to evidence that the probate court reviewed and approved the settlement, as well as evidence that the settlement resulted from arm's-length negotiations between buyers' attorney and plaintiff's attorney, and argues that the settlement amount was reasonable because it was what was required to restore plaintiff to the position he would have been in — living in his lifelong home — had defendant not committed malpractice.

¶ 33. The evidence potentially related to the reasonableness of the settlement presented to the jury in plaintiff's case, before defendant's motion for judgment as a matter of law, consisted of the following:

- Plaintiff gave up a payment from the buyers in the amount of $52,000 and paid $103,000 out of pocket to settle his case and keep his house.

- Plaintiff's two guardians participated in the settlement and the probate court had to approve it.

- Before the lawsuit, buyers offered to settle their claims and allow plaintiff to keep his house in exchange for $15,000; plaintiff offered to settle by paying $1,000.

- The only way to keep plaintiff in his house was to pay the settlement, and the guardians supported paying whatever it took to keep plaintiff in his home; and, to plaintiff, the home was worth more than his life savings.

- The settlement resulted from continuous negotiations between plaintiff's lawyer and buyers' lawyer over a long period of time.

- The town-assessed value of plaintiff's property was around $52,700.

¶ 34. The question before us is whether this evidence is sufficient to support a prima facie case that the $103,000 settle-

ment reached by plaintiff and buyers, which formed the basis for the jury's economic damage award of $103,000, was reasonable.[7]

■ ¶ 35. We conclude that plaintiff satisfied his burden. Although the evidence is admittedly thin, the jury could reasonably conclude that a settlement agreement negotiated at arm's length over a period of time between plaintiff's lawyer and opposing counsel, approved by plaintiff's guardians, and reviewed and approved by the probate court was a reasonable settlement. Given this evidence, plaintiff was not required to establish the market value of his property to prove the reasonableness of the settlement.

¶ 36. Moreover, although a settlement substantially out of sync with the actual market value of the property would not be objectively reasonable, a jury could reasonably conclude that the decision to pay a modest premium over market value in circumstances like this — to avoid the costs and risks of moving a vision-impaired octogenarian from his lifetime home in the final years of his life — was entirely reasonable.

¶ 37. This does not mean that plaintiff was entitled as a matter of law to reimbursement of the full $103,000 he paid to keep his home. Defendant was free to offer evidence and argument that this sum was excessive relative to the actual value of the property, and that plaintiff was not entitled to recover the full amount. But we cannot say that the evidence presented was insufficient to allow the jury to award the full $103,000.

*The award of damages for plaintiff's emotional distress is reversed, and the award of damages for his economic damages is affirmed.*

---

[7] We agree with defendant that plaintiff faced no liability to pay buyers' attorney's fees, so if the settlement represented a reasonable sum to discharge plaintiff's obligation to convey his property in exchange for $52,000 *plus* $35,000 for attorney's fees on top of that, it would have been an unreasonably generous settlement and could not properly be included in plaintiff's damages claim against defendant. (Ironically, plaintiff could have made a claim against defendant for his *own* attorney's fees resulting from defendant's negligence but did not do so.) However, the issue presented to the jury was the reasonableness of the total settlement. If plaintiff's payment of $103,000 to settle the case was reasonable, then the fact that buyers requested that $35,000 be allocated directly to buyers' attorneys does not defeat the damage award.